[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTIONS FOR SUMMARY JUDGEMENT AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
 I. Factual and Procedural History
In the present consolidated cases, the plaintiff, Chalet Navy Properties Limited Partnership (Chalet) and the defendants, Town of Groton (Town), the Tax Collector Nancy Dytko, and the Tax Assessor Anne Dougherty, dispute whether the Town has the CT Page 11328 authority to impose real and personal property taxes on the plaintiff's operation of a "Bachelor Officers Quarters" (BOQ) located on a Navy base.
Chalet seeks the following relief: (1) a declaratory ruling that the Town is without authority or jurisdiction to assess, impose, or collect real or personal property taxes on Chalet's property located at the Naval Submarine Base; (2) a temporary injunction enjoining the defendants from taking further steps to collect any real and/or personal property taxes currently assessed or to be assessed on Chalet Navy's property located on the Naval Submarine Base during the pendency of this action; (3) a permanent injunction enjoining the defendants from assessing, imposing, or collecting any real or personal property taxes on the property of Chalet Navy located at the Naval Submarine Base; and (4) a permanent injunction enjoining the defendants from assessing the BOQ in the name of Chalet Navy. Chalet Navy also seeks reimbursement of taxes previously paid. Additionally, Chalet also claims costs and attorney's fees.
The following facts are agreed to by the parties in a joint stipulation filed with the court. Chalet Navy is a private limited partnership. On February 20, 1990, Chalet and the Navy entered a contract whereby Chalet was to design, build, maintain and operate a BOQ on land located on the navy base which was leased from the federal government to Chalet for a period not to exceed 32 years. The Naval Base is owned by the federal government and is a federal enclave subject to the exclusive jurisdiction of Congress. The state of Connecticut has ceded jurisdiction over the property, including exemption from all state, county, and municipal taxation.
On February 13, 1998, Chalet Navy moved for summary judgment and on March 20, 1998, the Town filed a cross motion for summary judgment and an objection to the plaintiff's motion. Thereafter, on April 20, 1998, the plaintiff filed its reply. All parties have submitted extensive memoranda in support of its' respective positions. On July 17, 1998, this court heard oral argument.
 II. Summary Judgment, Legal Standard
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . In CT Page 11329 deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . ." Maffucci v. Royal Park Ltd. Partnership,243 Conn. 552, 554, 707 A.2d 15 (1998). "Where there is no question of fact or law which remains to be answered . . . a motion for summary judgment should be granted. If the sole question is one of law, it [can] be properly determined on a motion for summary judgment." (Citations omitted.) Schlott v. Zaremski,32 Conn. Sup. 567, 568-69, 345 A.2d 588 (1975).
 III. Discussion a. The Prior Action
As a threshold matter, while the Town does not argue res judicata or collateral estoppel, this court must first address the Town's argument that a federal judge has already decided this issue, since the resolution of this argument may be dispositive. Prior to the institution of the present two actions, Chalet brought an action against the Town in the United States District Court for the District of Connecticut. In that case, Chalet sought a preliminary restraining order and a temporary and permanent injunction providing that the Town lacks the authority to tax Chalet. Chalet raised the same exclusive jurisdiction arguments it raises here.
On December 21, 1995, Judge Arterton dismissed the case for lack of jurisdiction, finding that Chalet should have brought its tax appeal to either the Connecticut Superior Court or to the Board of Tax Review pursuant to General Statutes § 12-111. The district court found Chalet's Exclusive Jurisdiction argument unpersuasive in light of 10 U.S.C. § 2667. In her decision, Judge Arterton stated, "[i]n this case, Congress has provided clear authorization for the Secretary of a military department to lease government land and for this land to be subject to state and local taxation. 10 U.S.C. § 2667(e) (1995). . . The lease between the United States and the plaintiff clearly provides for the taxation of the leasehold interest and the building. Based on the statute and the lease governing the property in question, [the] plaintiff's Supremacy Clause argument is without merit. . . CT Page 11330 Because the property may be subjected to local taxation under federal law and plaintiff has not utilized the administrative remedies provided by the State of Connecticut to challenge its tax assessment, this Court finds that it does not have jurisdiction over this claim and thus, as required, dismisses this case." (Citations omitted.)
Chalet argues that Judge Arterton's decision is not res judicata because, although the court properly dismissed the action for lack of subject matter jurisdiction, it "based its ruling, in part, on the incorrect and unnecessary conclusion — without benefit of a complete factual record that 10 U.S.C. § 2667
governed the Chalet Navy lease." Chalet argues that at the time Judge Arterton issued her decision, none of the parties had alerted her to the existence of 10 U.S.C. § 2809 or to any of the stipulated facts or documentary evidence concerning the lease. Chalet correctly argues that for an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the prior action.
This court finds Chalet's argument persuasive. The District Court's ruling in that case is not dispositive since Judge Arterton was unaware of the application of section 2809 when she made her decision and since her decision was based on a lack of subject matter jurisdiction.
 b. Exhaustion of Administrative Remedies
Also as a preliminary matter, this court will address the Town's argument that the first action must be dismissed since Chalet failed to exhaust its administrative remedies in bringing this action before the Superior Court before seeking relief from the Board of Tax Review pursuant to General Statutes § 12-111
since, if correct, said argument may also be dispositive. Section12-111 provides, in relevant part, that "[a]ny person, including any lessee of real property . . . who is bound under the terms of his lease to pay real property taxes . . . claiming to be aggrieved by the doings of the assessors of such Town may appeal therefrom to the board of assessment appeals. . ." The Town, however, does concede that General Statutes § 12-119 permits Chalet to bring its appeal directly to the Superior Court if it is claiming that it has been wrongfully assessed. Section 12-119
provides, in relevant part, that "[w]hen it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set . . . the owner thereof or CT Page 11331 any lessee thereof . . . who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . ." This court, therefore, finds that the Town's reliance on General Statutes § 12-111 is inappropriate in the present case. Accordingly, this court rejects the Town's exhaustion argument.
 c. Jurisdiction to Tax
Chalet moves for summary judgment on the grounds that it is constitutionally immune from local taxation because the Naval Base is a federal enclave subject to the exclusive jurisdiction of the federal government, and that even if the Town could tax property on the Base, no state statute gives the Town the right to tax Chalet's leasehold interest. The Town opposes Chalet's motion and files a cross motion for summary judgment on the ground that Chalet's "exclusive jurisdiction" argument is without merit and that the lease is subject to local taxation.
Chalet argues that the contract was entered pursuant to10 U.S.C. § 2809 which gives the Navy the right to enter long term contracts for services with the private sector in connection with the construction, management, and operation of a facility on a military base. Chalet argues that only an explicit waiver of exclusive jurisdiction by an Act of Congress can diminish the federal governments's exclusive jurisdiction. Thus, Chalet argues, since section 2809 is silent regarding exclusive jurisdiction, there is no waiver of the same.
Chalet argues that 10 U.S.C § 2667, which authorizes the military to lease land for private use and permits local taxation, is inapplicable to the lease at issue because the defendant and the Navy both acknowledge, in the stipulation of facts, that the Navy entered the lease agreement pursuant to10 U.S.C. § 2809. Chalet argues that the Navy could not have relied on 10 U.S.C. § 2667 as authority to enter the lease agreement with Chalet since section 2667(a)(2) pertains to leases of military property for a non-public use.
The Town argues that although 10 U.S.C. § 2809 does not contain a specific waiver of exclusive jurisdiction, such silence does not necessarily indicate that Congress retained exclusive jurisdiction, thereby forbidding local taxation. In support, the CT Page 11332 Town cites to 10 U.S.C. § 2878(d) in which Congress specifically stated that leases created under that section were not subject to local taxation in that such leases were not subject to the provisions of section 2667. Essentially, the Town argues that since Congress explicitly made leases created under section 2878(d) exempt from local taxes, it could also have made leases created under section 2809 exempt from local taxes if that were its intention.
The Town cites Ben Lomond Inc. v. Fairbanks North StarBorough Board of Equalization, 760 P.2d 508, 510 (1988), in which the Supreme Court of Alaska found that a lease to construct housing units on an air force base authorized under 10 U.S.C. § 2828, which did not specifically discuss taxation, was subject to 10 U.S.C. § 2667. Chalet distinguishes this case on the ground that in that case there were two leases involved in that project, a lease for the land and a project lease, and that the land lease was authorized by 10 U.S.C. § 2667. Chalet argues that its lease has no connection with section 2667.
The Town also relies on Offutt Housing Co. v. County ofSarpy, 351 U.S. 253, 76 S.Ct 814 (1956). In that case, a private company entered a 75 year lease with the Air Force to build a housing project on an Air Force base. The Court held that under 10 U.S.C. § 1270 — the predecessor to the current 10 U.S.C. § 2667
— Congress consented to local taxation. Chalet distinguishes this case on the ground that Offutt involved a lease under the Wherry Military Housing Act of 1949 which expressly referred to and incorporated 10 U.S.C. § 2667. The Town also cites several cases from foreign jurisdictions following Offutt; Chalet also distinguishes those cases on the ground that they involved leases explicitly governed by 10 U.S.C. § 2667.
The Town also argues that the lease permits local taxation, citing to page H-B-30 § 42 which provides that the "LESSEE shall be responsible to pay all taxes, general or special. . ."
In its reply brief Chalet argues that Congress' express confirmation of its exclusive jurisdiction in 10 U.S.C. § 2878(d) does not indicate that its silence regarding exclusive jurisdiction in10 U.S.C. § 2809 constitutes a waiver of exclusive jurisdiction. Citing Humble Pipe Line Co. v. Waggonner,376 U.S. 369, 374 (1964), Chalet argues that a provision in the lease indicating that the lessee is to pay local taxes does not constitute a waiver of exclusive jurisdiction. CT Page 11333
This court finds that the factual stipulation submitted by the parties shows that the Navy and Chalet entered into the lease pursuant to 10 U.S.C. § 2809 which contains no waiver of exclusive jurisdiction and, therefore, all other statutes and case law is inapplicable in the present case. Paragraph 6 of the stipulation of facts provides, "On April 19, 1989, the Navy informed the Senate Appropriations Subcommittee on Military Construction that `pursuant to 10 U.S.C. § 2809,' the Navy intends to request proposals for the construction of BOQs at the Naval Submarine Base. The Navy stated that it planned `to issue [its] request for proposals by May 8, 1989.' The Navy said that `[u]pon receipt and evaluation of offers, [it] will provide the formal 21-day notification required by 10 U.S.C. § 2809 prior to entering into an agreement.' See Exhibit A, letter dated April 19, 1989 to Michael Walker, Professional Staff member, Subcommittee on Military Construction, at ¶¶ 1-3." (Emphasis added.) Additionally, Paragraph 9 of the stipulation provides, "In the bid solicitation, the navy informed potential bidders that10 U.S.C. § 2809 provided the legislative authority for theproposed lease arrangement and that, pursuant to that statute, `[n]otification to Congress as to the cost effectiveness of the agreements will be required prior to award.' See Exhibit B, Section B, at ¶ c entitled `Authority.'" (Emphasis added.) This court finds, therefore, that Congress authorized the lease pursuant to the dictates of 10 U.S.C. § 2809 and said section does not contain any waiver of jurisdiction to allow the Town to tax Chalet's interest on the Naval Base in Groton.
Additionally, this court further finds that Connecticut law supports Chalet's position. In 1868, the state of Connecticut deeded the parcel of land at issue to the United States. The deed, recorded in the 1901 land records provides, "[a]nd the said state of Connecticut does hereby cede to the United States of America all jurisdiction over said land hereby conveyed . . . only reserving to the said state of Connecticut the right to serve and execute all civil and criminal process therein." General Statutes § 48-1(a), effective July 14, 1983, provides, in relevant part, "[t]he consent of the state of Connecticut is given . . . to the acquisition by the United States, by purchase, condemnation of otherwise, of any land in this state required for customhouses, courthouses, post offices, arsenals or other public buildings of for any other purposes of the government. Exclusive jurisdiction in and over any land so acquired by the United States is ceded to the United States for CT Page 11334 all purposes except the service of all civil and criminal process . . . and, so long as such lands remain the property of the United States when acquired as aforesaid, the same shall beexempt from all state, county and municipal taxation, assessmentor other charges." (Emphasis added.)
Accordingly, this court finds that the lease in the present consolidated cases is controlled by 10 U.S.C. § 2809 and said section does not waive jurisdiction thereby permitting the Town the authority to tax Chalet's real or personal property. Further, Connecticut law does not permit said taxation.
 d. Reimbursement of Taxes Paid
The Town argues that there is no legal basis for Chalet's claim that it should be reimbursed taxes already paid to the Town, since Chalet did not bring this action within the one year statute of limitations set forth in General Statutes §12-119. Further, the Town argues that General Statutes § 12-64(a) authorizes taxation of Chalet's leasehold interest because the statute does not apply to residential leases only, and would include a hotel. Finally, the Town argues that it may tax Chalet's personal property pursuant to General Statute §12-71. Relying on federal case law, Chalet argues that the one year statute of limitations set forth in section 12-119 is irrelevant for purposes of seeking a refund of taxes paid since state laws pertaining to the assessment, payment or non-payment of local taxes do not apply to property on the Base. Chalet argues that state laws that have not been adopted by the United States, including tax laws, are ineffective over persons or property on the enclave.
Since this court finds the Town had no authority to tax Chalet's property; see part III. c., supra; this court finds the Town's arguments on this issue unpersuasive.
 IV. Conclusion
Accordingly, Chalet Navy Limited Properties Partnership's motions for summary judgment (## 106 106) are granted. The Town of Groton's, the Tax Collector's, and the Tax Assessor's, motions for summary judgment (## 110 110) are denied.
Therefore,
CT Page 11335
 (1) The court finds that the Town of Groton is without authority orjurisdiction to assess, impose, or collect real or personal property taxes on Chalet's property located at the Naval Submarine Base;
 (2) The court orders a temporary injunction enjoining the defendants from taking further steps to collect any real and/or personal property taxes currently assessed or to be assessed on Chalet Navy's property located on the Naval Submarine Base;
 (3) The court orders a permanent injunction enjoining the defendants from assessing, imposing, or collecting any real or personal property taxes on property of Chalet Navy located at the Naval Submarine Base;
 (4) The court orders a permanent injunction enjoining the defendants from assessing the BOQ in the name of Chalet Navy; and
 (5) The court will, upon request, conduct a hearing to receive evidence regarding reimbursement of taxes already paid, attorney's fees, and costs.
D. Michael Hurley Judge Trial Referee